| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | For Publication |
| ------------------------------------------------------------------ | |
| In re: | Chapter 11<br>Case No. 05-60200 (BRL) |
| CALPINE CORPORATION, et al., | Jointly Administered |
|                            Debtors. | |
| ------------------------------------------------------------------ | |
| CALPINE CORPORATION, | |
|                       Plaintiff, | Adv. No. 07-1760 (BRL) |
|       v. | |
| ROSETTA RESOURCES INC., | |
|                       Defendant. | |
| ------------------------------------------------------------------ | |

APPEARANCES:

KIRKLAND & ELLIS LLP
Counsel for the Debtors
153 East 53rd Street
Citigroup Center
New York, NY 10022-4611
(212) 446-4733
By: Richard M. Cieri
     Marc Kisselstein
     David Seligman
     Edward Sassower
     James J. Mazza, Jr.
     Alexandra S. Kelly

200 East Randolph Drive
Chicago, IL 60601
By: Andrew R. McGaan
     Barack S. Echols

CADWALADER WICKERSHAM & TAFT LLP
Counsel for Rosetta Resources Inc.
One World Financial Center
New York, NY 10281
(212) 504-6013
By:  John H. Bae

MAYER BROWN ROWE & MAW, LLP
Counsel for Rosetta Resources Inc.
700 Louisiana Street

Suite 3400
Houston, TX 770022730
(713) 238-3000
By: Charles S. Kelley
    William H. Knull

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Counsel for Rosetta Resources Inc.
One Liberty Plaza
New York, NY 10006
By:  Thomas J. Moloney

MORGENSTERN JACOBS & BLUE, LLC
Special Conflicts Counsel for the Official
Committee of Unsecured Creditors
885 Third Avenue
New York, NY 10022
By:  Peter D. Morgenstern
     Gregory A. Blue

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
Counsel for the Official Committee of Equity Security Holders
One New York Plaza
New York, NY 10004
By:  Brad Eric Scheler
     Gary Kaplan
     Michael de Leeuw
     Susanna J. Gray

Before:  Burton R. Lifland
         United State Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION TO DISMISS COMPLAINT

Defendant Rosetta Resources Inc. ("Rosetta") moves pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("Federal Rules"), made applicable herein pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for an order dismissing the complaint filed by Calpine Corporation ("Calpine"), or in the alternative, an order staying this adversary proceeding, pending the determination of whether creditor claims will be

satisfied in full pursuant to the plan of reorganization proposed by Calpine and its affiliated debtors (collectively, the "Debtors"). The complaint seeks to avoid the transfer of Calpine's property to Rosetta pursuant to sections 548 and 544 of title 11, United State Code (the "Bankruptcy Code") and to recover the property or its monetary value, with interest, pursuant to section 550 of the Bankruptcy Code.[1]

**Background**

According to the complaint, prior to the petition date, on July 7, 2005, Calpine entered into a purchase and sale agreement to sell substantially all of its remaining domestic oil and gas assets (other than certain gas pipeline assets) (the "Rosetta Sale") for $1.05 billion to a group led by Calpine insiders, the management team of its subsidiary, Rosetta.[2] The buyers funded the purchase price through debt and a private placement offering of equity in which they themselves participated. The bulk of the assets consisted of in-ground unextracted hydrocarbons not facilely estimated by either bankers or non-insider hydrocarbon experts.

At the time of the Rosetta Sale, Calpine was experiencing a liquidity crisis and combined with its debt load, rendered it unable to meet massive debt payments due in 2005. Accordingly, Calpine began liquidating assets not subject to liens and debt restrictions. Calpine asserts that spinning off the Rosetta assets to insiders helped Calpine generate cash quickly, without the regulatory and due diligence delays of an IPO or an orderly asset sale. As a result, Calpine never formally offered these oil and gas assets for sale or provided due diligence to potential buyers.

---

[1] The Official Committee of Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Equity Security Holders (the "Equity Committee") have intervened in this adversary proceeding and have filed objections to Rosetta's motion.

[2] Rosetta was formed in 2005 for the purpose of acquiring and operating substantially all of the oil and gas exploration and production business of Calpine, through its subsidiaries.

Calpine's board received a fairness opinion issued by bankers who had reviewed the transaction, based principally on information the insiders themselves provided, and concluded that the transaction was fair under the circumstances. But those bankers explicitly disclaimed any opinion as to whether the price represented "fair market value" or "fair value" within the meaning of the insolvency laws.

On June 29, 2007, Calpine commenced this adversary proceeding against Rosetta. Calpine asserts two causes of action, both seeking to (I) avoid the Rosetta sale as a constructively fraudulent transfer and (ii) recover either the oil and gas business Rosetta purchased or its asserted value in monetary damages alleging that less than reasonably equivalent value was provided in exchange for the business. Complaint at ¶¶ 23-29. Calpine alleges that the reasonably equivalent value of the stock of the Calpine affiliates acquired by Rosetta exceeded the $1.05 billion purchase price "by an amount presently estimated to be approximately $400 million." Complaint at ¶ 20.

Rosetta contends that the complaint must be dismissed pursuant to Federal Rule 12(b)(1), made applicable herein by Bankruptcy Rule 7012, because Calpine lacks standing to assert fraudulent transfer claims, and the Court lacks subject matter jurisdiction over this adversary proceeding. Rosetta also contends that the Complaint should be dismissed pursuant to Federal Rule 12(b)(6), insofar as creditors of the Debtors' estates have not been harmed, and no claim for relief can be stated against Rosetta.

Rosetta contends that a claim for fraudulent transfer under sections 548 or 544(b) of the Bankruptcy Code is a remedy only available for the benefit of creditors; the remedy is not available to the debtor or the debtor's equity security holders. Therefore, Rosetta argues, where the creditors have not been harmed, the debtor or its equity security holders lack standing to

prosecute fraudulent transfer claims. Rosetta contends that because the unsecured creditors of these estates will receive full recovery on their claims, with interest, there is no possible way in which Calpine can demonstrate that the creditors of these estates have been harmed as a consequence of the sale of the oil and gas businesses to Rosetta or the sale of Rosetta's stock to unaffiliated institutional investors. Thus, as a matter of law, Rosetta argues that the relief sought in Calpine's Complaint is not available to Calpine, which lacks standing to prosecute the claims, Calpine has no claim to assert for which relief can be granted and the Complaint therefore must be dismissed. Rosetta also argues that the Complaint must be dismissed because it does not allege any transfer actually made by Calpine to Rosetta.

In addition, Rosetta contends that the Complaint must be dismissed because it will not yield any net benefit to the estates. Even if Calpine can somehow recover some amount from Rosetta pursuant to section 550 of the Bankruptcy Code, Rosetta submits that such recovery will give rise to a prepetition unsecured claim by Rosetta under the Purchase Agreement and section 502(h) of the Bankruptcy Code for the amount of such recovery, which must be paid, in full, before any distribution can be made to Calpine's shareholders. Thus, a "successful" outcome in this litigation for Calpine will yield no net benefit to the creditors, while it will yield a net loss to the estates based on the costs and expenses of this complex litigation.

Lastly Rosetta claims that to the extent there is any doubt regarding the recoveries creditors will receive from these estates, the Court should stay this adversary proceeding, until such time as all issues of valuation of the Debtors' businesses and assets can be fully vetted, and the Debtors are able to confirm their belief that the creditors of these estates will receive a 100% recovery on their claims.

**Discussion**

When considering a motion to dismiss a complaint under Federal Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The standards for dismissal under Federal Rules 12(b)(6) and 12(b)(1) are substantively identical. *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2 Cir. 2003).

A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly* 127 S.Ct. at 1965, *citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Bankruptcy Code bestows broad powers upon a trustee to avoid certain transfers of property made by the debtor before the filing of the bankruptcy petition. "In this way, the transferred property is returned to the estate for the benefit of all persons who have presented valid claims." *See Christy v. Alexander & Alexander of NY, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 55 (2d Cir.1997). Specifically, section 548 of the Bankruptcy Code provides for the avoidance of any transfer of an interest in property made by the debtor in the year prior to the filing of its bankruptcy petition as a fraudulent conveyance provided that the transfer was made with an actual fraudulent intent or with the badges of fraud constituting constructive fraud of the debtor's creditors. *See* 11 U.S.C. § 548(A) and (B). Similarly, section 544 the trustee may avoid any transfer of an interest of the

debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title. *See* 11 U.S.C. § 544(b)(1)

To the extent a transfer is avoided under various provisions of the Bankruptcy Code, under section 550(a), the trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property. 11 U.S.C. § 550(a); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 439 (S.D.N.Y. 2001).

"Courts have consistently held that an avoidance action can only be pursued if there is some benefit to creditors and may not be pursued if it would only benefit the debtor." *Balaber-Strauss v. Town of Harrison (In re Murphy)*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005)[3] *citing Wellman v. Wellman,* 933 F.2d 215, 218 (4th Cir.), *cert. denied,* 502 U.S. 925 (1991) (holding that there is no recovery for the benefit of the estate "when the result is to benefit only the debtor rather than the estate"); *Join-In Int'l (U.S.A.) Ltd. v. New York Wholesale Distributors Corp. (In re Join-In Int'l (U.S.A.) Ltd.),* 56 B.R. 555, 561 (Bankr.S.D.N.Y.1986) ("[I]f the recovery of the alleged fraudulent conveyance will solely benefit the debtor it will not be permitted to maintain the proceeding."); 5 Collier on Bankruptcy ¶ 550.02[2] (15th ed. rev.2004) ("Thus, in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit only the debtor rather than the estate.")

However, as the Ninth Circuit has explained

---

[3] The *Murphy* judge noted in a subsequent opinion that "It is *not* clear that fraudulent conveyance claims can *never* be brought in whole or in part to benefit equity.... In most cases, from the perspective of Bankruptcy Code objectives, it makes sense to say that fraudulent conveyance claims may be asserted only to the extent necessary to benefit creditors, as opposed to the debtor and the debtor's equity. But I decline to embrace an all-encompassing bright line rule holding that a fraudulent conveyance claim can never be brought to benefit equity." *In re Bayou Group, LLC,* 372 B.R. 661, 664 (Bankr. S.D.N.Y. 2007)

Courts construe the "benefit to the estate" requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers. In several cases, for example, courts have refused to dismiss avoidance actions even though the unsecured creditors had received full distributions under a plan of reorganization. The courts reasoned that the litigation could "benefit the estate" because the creditors had received an equity stake in the reorganized debtor and any recovery would increase the corporation's value. *See Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.),* 163 B.R. 964, 973 (Bankr.D. Del.1994) ("[T]he unsecured creditors will benefit from the enhanced value of reorganized TWA by reason of being shareholders of the reorganized debtor."); [*In re Southern Industrial Banking Corp.,* 59 B.R. 638, 641 (Bankr. E.D. Tenn. 1986)]("[To the extent that ... recovery of fraudulent transfers ... operates to increase the assets and financial health of the [debtor's] successor-in-interest, it also operates to proportionally increase the value of those ownership rights in the successor-in-interest which constitute a portion of the unsecured creditors' distribution under the plan.").

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 811 -812 (9th Cir. 1994); *see also Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003)(Court found that section 550(a) does not say that some benefit must flow to unsecured creditors, instead "[s]ection 550(a) speaks of benefit to *the estate*-which in bankruptcy parlance denotes the set of all potentially interested parties-rather than to any particular class of creditors."); *MC Asset Recovery, LLC v. The Southern Co. (In re Mirant Corp.),* Slip Op. at 19, Case No. 1:06-0417, AP No. 05-4099 (N.D. Ga. Dec. 11, 2006)("Even assuming *arguendo* that the creditors in this case have been 'satisfied in full,' which is in dispute, any recovery of fraudulent transfers will inure to the benefit of the prepetition creditors as holders of an equity stake and thus will constitute a benefit to the estate."); *In re Amarex, Inc*. 96 B.R. 330, 334 (W.D.Okl. 1989)("The benefit to the unsecured creditors has been defined broadly to include instances in which the purported representative's successful prosecution of the claim would increase the financial assets of the debtor's successor-in-interest and would thus increase the value of the ownership rights in the successor-in-interest held by the unsecured creditors."); *Gonzales v. Nabisco Division of Kraft Foods, Inc., (In re Furrs)*, 294 B.R. 763, 772 (Bankr. D.N.M. 2003)("A better working definition

would be that the estate benefits when the action increases the value or assets of the estate.");

*Kennedy Inn Assc. v. Perab Realty Corp. (In re Kennedy Inn Associates)*, 221 B.R. 704, 715 (Bankr. S.D.N.Y. 1998)("What matters is whether creditors will receive some benefit from the recovery of the challenged transfers, even if it is not an increase in the amount the creditors will receive, but in the form of a debtor increasing its assets and improving its financial health so that its prospects of being able to satisfy its obligations to its creditors under the plan are improved"); *Funding Sys. Asset Mgmt. Corp. v. Chemical Bus. Credit Corp. (In re Funding Sys., Asset Mgmt. Corp.*), 111 B.R. 500, 523 (Bankr.W.D. Pa.1990) (The appropriate standard for determining whether recovery by Debtor would benefit its unsecured creditors "is whether unsecured creditors will receive some benefit from the recovery of the preferences, even if it is not an increase in the amount the creditors will receive. All that is required is that recovery by Debtor will increase its assets and improve its financial health to the extent that the likelihood is improved of its being able to satisfy its obligations to its creditors under the Plan."); 5 *Collier on Bankruptcy* ¶ 550.02[2] at 550-7 (15th ed. rev. 2007) ("If the recovery will have some positive benefit to the estate or its creditors, however, recovery may be had even if such benefit is indirect."). *See also Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d 1323, 1327 (10th Cir.1989) (Court found that to the extent the recovery from avoidance actions exceeded the amount of claims, "the remainder will go to the reorganized debtor who will then be in a better position to meet its financial commitments, if any, under the plan."); *Morris v. Kansas Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan.1991) ("Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."); *Pritchard v. Brown (In re Brown),* 118 B.R. 57, 60 (Bankr. N.D. Tex.1990) (same);

The determination of whether a recovery would benefit the estate is done on a case-by-case basis. *Gonzales v. Conagra Grocery Products Co.* (*In re Furr's Supermarkets, Inc.*), 373 B.R. 691, 699 (10th Cir. BAD 2007); *Tennessee Wheel & Rubber Co. v. Caption Corporate Air Fleet (In re Tennessee Wheel & Rubber Co.)*, 64 B.R. 721, 726 (Bankr. M.D. Tenn. 1986) *afield,* 75 B.R. 1 (M.D. Tenn. 1987).

In its Disclosure Statement, Calpine predicts, based upon the estimates of future value of the reorganized company and the value of disputed claims, that the equity in the reorganized company may be sufficient to satisfy the unsecured creditor claims. However, the valuation relies on a variety of assumptions including future company performance, market events, financing and other events that may or may not materialize. Calpine acknowledges that under some of its own valuation models, some unsecured classes may not receive sufficient stock to pay both the owed principal and interest. In all events, unsecured creditor claims would be satisfied in whole or in part with distributions of equity in the reorganized company. Under the proposed plan of reorganization, several classes of unsecured creditors will be impaired because they are receiving only an equity stake in the reorganized company. *See Davison v. East Tenn. Equity, Ltd. (In re Southern Indus. Banking Corp.)*, 59 B.R. 638, 641 (Bankr. E.D. Tenn. 1986)("to the extent that plaintiff's recovery of fraudulent transfers and preferences operates to increase the assets and financial health of the successor-in-interest, it also operates to proportionately increase the value of those ownership rights in the successor-in-interest which constitute a portion of the unsecured creditors distribution under the plan.")*; compare Whiteboard Plastics Co., Inc. v. Chase National Bank of New York City*, 179 F.2d 582, 584 (2d Cir.1950)(court denied avoidance of a lien finding it was "not in the interest of the general creditors" and concluding that the debtor sought avoidance "purely for its own benefit.")

Accordingly it is not beyond purview that the Debtor may be able to establish at trial that a recovery in this action will result in a benefit to these estates and thus, the motion to dismiss on that ground is denied.

Rosetta's additional arguments challenging the Complaint are premature in light of the fact that the allegations of the Complaint must be taken as true. Rosetta argues that Calpine is not the proper plaintiff because the operative agreements by which the oil and gas business was sold demonstrate that affiliates of Calpine, not Calpine itself, made the transfers to Rosetta. However, the Complaint alleges that Calpine sold its oil and gas properties to Rosetta and that the transaction, however it was structured, constituted a transfer by Calpine. Moreover, the transaction documents referred to by Rosetta are neither identified not referred to in the operative allegations of the Complaint and may not be considered on a motion to dismiss. *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Similarly, Rosetta's speculation that any recovery the Debtor would obtain would be negated by a claim of Rosetta under section 502(h) is simply that - speculation. *See* 4 Collier on Bankruptcy § 502 .09[2] at 502-74 (15th ed. rev. 2007) (explaining that the amount of the claim allowable under section 502(h) is not the value of the property recovered but rather the value of the consideration paid by the transferee for the property recovered.).

Accordingly, the motion to dismiss is denied in all respects.

IT IS SO ORDERED.

Dated: New York, New York
      October 24, 2007

                                          /s/ Burton R. Lifland
                                          United States Bankruptcy Judge